**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

EFL GLOBAL LLC, et al. *

Plaintiffs, *

v. * Civil No.: BPG-22-2926

UNDER ARMOUR, INC. *

Defendant *

* * * * * * * * * * * *

**MEMORANDUM OPINION**

Currently pending before the court are defendant Under Armour, Inc.'s Motion to Dismiss ("defendant's Motion") (ECF No. 16), plaintiffs' Opposition to Defendant's Motion to Dismiss ("plaintiffs' Opposition") (ECF No. 26), and Under Armour, Inc.'s Reply Memorandum to Plaintiffs' Opposition to Motion to Dismiss ("defendant's Reply") (ECF No. 27). The issues are fully briefed and no hearing is necessary. Loc. R. 105.6. For the reasons stated herein, defendant's Motion to Dismiss (ECF No. 16) is denied.

## I. BACKGROUND

EFL Global LLC ("EFL-G") and EFL Container Lines, LLC ("EFL-C") (collectively, "Plaintiffs") allege the following facts in their Complaint. On May 1, 2021, EFL-C and Under Armour, Inc. ("defendant") entered into a Non-Vessel Operating Common Carrier Services Agreement, which expired on April 30, 2022. (ECF No. 1 at ⁋ 13). On September 1, 2021, Plaintiffs entered into an Air Freight Service Contract for a one-year term, which expired on August 30, 2022. (Id. at ⁋ 14). Beginning in February 2022, disputes arose concerning defendant's failure to pay plaintiffs "millions of dollars of outstanding fees . . . for shipments delivered in 2021 and 2022." (Id. at ⁋ 18). On August 10, 2022, the parties entered into a Settlement and Release

Agreement ("the Agreement"), pursuant to which defendant agreed to pay a sum of money "in full satisfaction of any and all claims, known or unknown, that the Parties asserted or could have asserted in connection with the Services" provided by plaintiffs. (Id. at ⁋ 19). Defendant paid the settlement amount on August 12, 2022. (Id. at ⁋ 20). At that time, 33 shipping containers of defendant's freight were being stored by plaintiffs. (Id.) Plaintiffs continued to store defendant's freight between August 12, 2022 and September 7, 2022, when defendant accepted delivery of the last of its products. (Id. at ⁋ 22). The total cost of storage for the period between August 12, 2022 and September 7, 2022 was $132,290. (Id.) On September 7, 2022, Plaintiffs sent defendant invoices and related materials requesting payment of the outstanding storage costs. (Id. at ⁋ 23). On September 27, 2022, defendant informed plaintiffs that defendant would not pay the storage costs, because "those charges were 'related to delivery of cargo captured under the settlement agreement.'" (Id. at ⁋ 24).

On November 10, 2022, plaintiffs filed suit in this court, asserting three counts against defendant: (1) breach of contract, (2) account stated, and (3) unjust enrichment, stated in the alternative to Count 1. (Id. at ⁋⁋ 37-46). On January 30, 2023, defendant filed a Motion to Dismiss. (ECF No. 16). Defendant moves to dismiss all counts of plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Id.)

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When ruling on such a motion, the court must "accept[] all well-pleaded allegations in the plaintiff's complaint as true" and "draw[] all

reasonable factual inferences from those facts in the plaintiff's favor." Id. at 244. Nonetheless, "[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Rather, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft, 556 U.S. at 678 (internal citation and quotation marks omitted). A plaintiff satisfies this standard not by forecasting evidence sufficient to prove the elements of the claim, but by alleging sufficient facts to establish those elements. Walters, 684 F.3d at 439. Accordingly, "while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

Defendant moves to dismiss all counts of the Complaint, arguing that the Agreement between the parties bars all of the claims asserted in plaintiffs' Complaint.[1] (ECF No. 16-1 at 1). Plaintiffs respond that the storage fees "did not begin to accrue until several days after the Effective date [(i.e., August 10, 2022)] and were not contemplated by the parties at the time the Agreement was negotiated," such that plaintiffs' claims were not released by the Agreement. (ECF No. 26 at 1). "Settlement agreements are enforceable as independent contracts, subject to the same general rules of construction that apply to other contracts." Kaye v. Wilson-Gaskins, 135 A.3d 892, 902 (Md. App. Ct. 2016) (quoting Maslow v. Vanguri, 896 A.2d 408 (Md. App. Ct. 2006)). Maryland

[1] Plaintiffs first argue that defendant's Motion was not timely filed and should be denied on that basis, such that the court need not consider the merits of defendant's Motion. (ECF No. 26 at 2). Defendant's Motion was filed on January 30, 2023, four days after the January 26, 2023 deadline to file. Defendant contends, however, that the Motion was timely filed because it was filed within 21 days of January 9, 2023, the service date identified in the Notice of Service of Process. (ECF No. 27 at 7). Under the circumstances, the court concludes that it is more appropriate to address the merits of this case, rather than reject defendant's Motion on technical grounds, as argued by plaintiffs.

courts follow "the objective theory of contracts," under which the court's primary task "is to objectively determine what a reasonable person in the position of the parties would have intended th[e] agreement to mean at the time it was effectuated."[2] Id. (citing Gen. Motors Acceptance Corp. v. Daniels, 492 A.2d 1306 (Md. 1985)).

Defendant, relying on Kaye v. Wilson-Gaskins, 135 A.3d 892 (Md. App. Ct. 2016), argues that the parties mutually agreed to waive all claims arising in any way from the services regardless of when the claims arose. (ECF No. 27 at 3). The reasoning in Kaye is not instructive here. The issue before the Court in Kaye was whether the parties' agreement manifested an intent to impose liability on either party for bringing suit for claims released by the agreement. Kaye, 135 A.3d at 895. That issue is not presented in this case. Instead, the court is presented with a straightforward application of the terms of the Agreement to determine whether plaintiffs' claims were released. Moreover, the language of the agreement in Kaye is meaningfully different from that in this case. In Kaye, the agreement clearly contemplated the release of future claims, in the event any claim arose after the execution of the release. Kaye, 135 A.3d at 678-79 (the parties executed a settlement and mutual release whereby they agreed to "release and forever discharge [each other] . . . of and from any and all action, claims and demands . . . of whatever nature now existing or which may hereafter arise out of the legal representation.").

Here, the Agreement reads, in pertinent part:

> **Release of UA**. In exchange for the Settlement Amount, the receipt and sufficiency of which is hereby acknowledged, EFL, on behalf of itself and its officers, directors, members, subsidiaries, affiliates, representatives, agents, attorneys, and successors and assigns (the "EFL Releasors"), hereby releases, acquits, and forever discharges UA, and each of UA's predecessors, successors, affiliates, subsidiary corporations, parent corporations, agents, assigns, representatives, directors, officers, employees,

[2] The Agreement contains a provision setting forth the "Governing Law," which states in relevant part: "This Agreement and any other documents referred to herein shall be governed by, construed, and enforced in accordance with the laws of the State of Maryland, without regard to conflict of law principles." (ECF No. 16-2 at 4-5). Accordingly, the court applies Maryland law to interpret the Agreement between the parties.

> attorneys, advisors, insurers, present and former shareholders, and all persons acting by, through, under, or in concert with them (collectively, the "UA Releasees"), of and from any and all actions, causes of action, suits, defenses, losses, damages, sums of money, rights, obligations, liabilities, and all other claims and demands whatsoever, whether legal or equitable, known or unknown, asserted or not asserted, fixed or contingent, that the EFL Releasors ever had, claim to have, or may have had against the UA Releasees, or any of them, **through the Effective Date**, including, for the avoidance of doubt, claims arising in any way from the Services and the Disputed Amounts ("EFL's Released Claims"), provided, however, that EFL does not release and hereby specifically retains the right to assert any claim arising under this Agreement against UA.

(ECF No. 16-2 at 2-3) (Emphasis added). In relevant part, the Agreement releases all claims that plaintiffs "ever had, claim to have, or may have had against [defendant] . . . **through the Effective Date**." (ECF No. 16-2 at 2). The plain language of the Agreement does not include a release of any future claims, and as plaintiffs note, "[a] release will 'ordinarily release all present, but not future, claims.'" 29 Williston on Contracts § 73:10 (4th ed.).

The scope of the Agreement was temporally limited in two respects. First, plaintiffs released defendant from any claims they "ever had, claim to have, or may have had against" defendant. (ECF No. 16-2 at 2). The language of the Agreement contemplates only those claims which existed at the time the Agreement was executed, unlike in Kaye, which included claims "which may hereafter arise." Kaye, 135 A.3d at 897. Nothing in the language of the parties' Agreement reflects an intent to release claims for future conduct. Second, the Agreement is limited to those claims which arose "through the Effective Date" of August 10, 2022. (ECF No. 16-2 at 2). Plaintiffs allege in the Complaint that "[r]ather than accept delivery of its products from those shipping containers, [defendant] continued to store its products [i]n those containers for up to 25 additional days, knowing full well, based on its dealings with EFL, that it was incurring daily storage and chassis charges on each." (ECF No. 1 at 1). As such, plaintiffs' Complaint alleges causes of action based on conduct which occurred after the "Effective Date" of the Agreement.

Therefore, plaintiffs' claims are not barred by the terms of the Agreement. Accordingly, defendant's Motion to Dismiss (ECF No. 16) is denied.

## IV. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss (ECF No. 16) is denied. A separate order will follow.

Date: July 27, 2023

/s/
Beth P. Gesner
Chief United States Magistrate Judge